# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| **CHELSEA YACHT SERVICES, LLC** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 4:19-cv-481** |
| | § | |
| **BRUNSWICK CORPORATION.** | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW Plaintiff, Chelsea Yacht Services, LLC ("**Plaintiff**"), and files this, its *First Amended Complaint* against Defendant, Brunswick Corporation ("**Brunswick**" and/or "**Defendant**") and respectfully shows unto the Court as follows:

## I.
## PARTIES

1.  Plaintiff is a Texas limited liability company having its principal place of business at 3601 Greenbriar Drive, Dallas, Texas 75225.

2.  Defendant, Brunswick Corporation, is a Delaware corporation conducting business in Denton County, Texas and throughout Texas. Brunswick may be served in this matter by delivering service of process to its registered agent, C T Corporation System, at 1999 Bryan St., Ste. 900, Dallas, Texas 75201, and to its counsel of record, Stacey L. Fuller, McGlinchey Stafford PLLC, 1001 McKinney, Suite 1500, Houston, Texas 77002, or wherever else it may be found.

## II.
## VENUE AND JURISDICTION

3.  This is a civil action over which the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, and Plaintiff seeks monetary relief in excess of the jurisdictional minimum amount

in controversy.

4. Defendant previously removed this action to the Eastern District of Texas, Sherman Division pursuant to 28 U.S.C. 1441(a).

## III.
## RESPONDEAT SUPERIOR

5. Plaintiff invokes the doctrine of respondeat superior. Whenever in this Complaint it is alleged that Defendant did or failed to do any act or thing, it is meant that Defendant's governing bodies, directors, officers, vice principals, managers, agents, servants, employees, partners, alter-egos, joint-venturers, contractors subject to their control, and/or other representatives did or failed to do such act or thing and that at the time such conduct occurred, it occurred with the authorization and/or ratification of Defendant and/or was done in the normal and routine course and scope of employment or agency of Defendant's governing bodies, directors, officers, vice principals, managers, agents, servants, employees, partners, alter-egos, joint-venturers, contractors or representatives subject to Defendant's control.

## IV.
## FACTUAL BACKGROUND

6. Plaintiff operates a yacht chartering business and engaged with Brunswick for the purchase of a Sea Ray L550 Fly Yacht ("**L550 Fly**"). Sea Ray, the manufacturer of the L550 Fly and other models, operates as part of the Brunswick Boat Group, a division of Brunswick. Brunswick designs, manufactures, and markets Sea Ray yachts.

7. On or around February 8, 2018, Plaintiff entered into a Purchase and Sale Agreement (the "**Contract**") with MarineMax, Inc. ("**MarineMax**") for the purchase of an L550 Fly for a total sale price of $1,998,763.00. The transaction involved a trade-in of Chelsea's previously owned Sundancer 350. Prior to Plaintiff's decision to enter into the Contract and purchase the L550 Fly, Plaintiff was engaged by a number of representatives from Brunswick in

an effort to induce Plaintiff into purchasing the L550 Fly. Defendant repeatedly pitched Plaintiff the concept of upgrading to a larger yacht, all the while knowing that once Plaintiff purchased the L550 Fly, it would not have the opportunity to eventually upgrade to a larger yacht.

8. Defendant knew that Plaintiff had a strong interest in an eventual trade-in for an upgraded and larger yacht as Plaintiff had stated to Defendant, prior to purchasing the L550 Fly, that it intended to avail itself of Defendant's upgrade program in the future. Trading-in/upgrading for a larger yacht is a standard and widely accepted practice in Defendant's industry and Plaintiff was in the process of trading-in its previously-owned smaller yacht for the larger L550 Fly.

9. Defendant took advantage of Plaintiff by not disclosing the fact that Plaintiff would in fact have no opportunity to take part in an upgrade program once the L550 Fly was purchased. At a Yacht Expo attended by Plaintiff and Defendant in late 2017, representatives from Brunswick continued to persuade Plaintiff to purchase the L550 Fly under the guise that it could eventually upgrade to a larger yacht. Plaintiff relied upon the representations made by Defendant and entered into the Contract to purchase the L550 Fly from MarineMax for $1,998,763.00.

10. Unbeknownst to Plaintiff, the entire line of Defendant's yachts (greater than 40 ft. in size) were being eliminated from Brunswick's product line, including all yachts larger than the L550 Fly which Defendant persuaded Plaintiff to purchase. Upon information and belief, Defendant was aware that these products would be eliminated, but nevertheless induced Plaintiff into purchasing the L550 Fly. In doing so, Defendant failed to disclose this material information and represented to Plaintiff that after purchasing the L550 Fly it could avail itself of trade-in upgrades available to customers. Defendant capitalized on Plaintiff's lack of knowledge regarding the impossibility of an eventual upgrade.

11. Within weeks of Plaintiff's purchase, the L550 Fly began showing signs of

substantial defects including major electrical issues; water leaks; water damage; water system failures; interior damages; and engine-related failures. These defects caused reliability issues such that Plaintiff was unable to use the L550 Fly to charter customers. The defective L550 Fly derailed Plaintiff's business as the yacht remained inoperable for an extended period of time.

12. Defendant and MarineMax were immediately made aware of the deficiencies and, despite receiving multiple notices from Plaintiff, failed and/or refused to make the necessary repairs. The defects present within the L550 Fly posed significant life and safety threats to Plaintiff's passengers, and the L550 Fly experienced issues which can (and did) result in the vessel being stranded at sea and/or capsized. Defendant and MarineMax admitted to Plaintiff that these defects were "significant" and problems which Plaintiff should not have encountered after purchasing this type of yacht. After a series of failed repair attempts, MarineMax eventually purchased the L550 Fly back from Plaintiff at a reduced price, resulting in a significant loss to Plaintiff of more than $300,000.00.

13. As a result of the acts and omissions of Defendant both before and after Plaintiff's purchase, Plaintiff suffered damages which it now seeks to recover from Defendant.

## V.
## COUNT ONE: DTPA CLAIM

14. All factual allegations set forth elsewhere in this Complaint are incorporated by reference in support of this cause of action as if specifically alleged herein.

15. Plaintiff brings this cause of action pursuant to Section 17.01, *et seq.*, of the TEXAS BUSINESS & COMMERCE CODE (the "**DTPA**"). Plaintiff is a consumer under the DTPA and Defendant is subject to liability thereunder.

16. Defendant violated the DTPA when Defendant engaged in false, misleading, or deceptive acts or practices that Plaintiff relied on to Plaintiff's detriment. Specifically, Defendant

violated the DTPA in at least the following particulars:

    a.    Representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities they do not have;

    b.    Representing that goods are of a particular standard, quality or grade, if they are not;

    c.    Representing that an agreement confers or involves rights, remedies, or obligations that it does not, or that are prohibited by law;

    d.    Failing to disclose information about goods or services that was known at the time of the transaction if the failure to disclose was intended to induce the consumer to enter into a transaction that the consumer would not have entered into if the information had been disclosed.

17. Defendant further violated the DTPA when Defendant engaged in an unconscionable action or course of conduct that, to Plaintiff's detriment, took advantage of Plaintiff's lack of knowledge, ability, experience or capacity to a grossly unfair degree. Specifically, Defendant took advantage of the fact that Plaintiff was unaware that all yachts larger-than the L550 Fly were being eliminated from the product line and Plaintiff would never have the opportunity to take part in an upgrade program, despite Defendant's representations to the contrary. Defendant took advantage of Plaintiff's lack of knowledge by inducing it into purchasing the L550 Fly based upon false representations and failures to disclose information Defendant knew was material to Plaintiff in entering into the transaction. These are deceptive practices barred by the DTPA.

18. Plaintiff gave Defendant notice as required by TEXAS BUSINESS & COMMERCE CODE Section 17.505(a). Defendant's wrongful conduct was a producing cause of Plaintiff's

injury, which has resulted in pecuniary loss to Plaintiff.

19. Further, Defendant acted knowingly and intentionally, which entitles Plaintiff to recover mental-anguish damages under TEXAS BUSINESS & COMMERCE CODE Section 17.50(b)(1). Because Defendant acted knowingly and intentionally, Plaintiff is entitled to recover treble economic damages under Section 17.50(b)(1) of the TEXAS BUSINESS & COMMERCE CODE.

20. Plaintiff is also entitled to recover reasonable and necessary attorneys' fees for prosecuting this suit under TEXAS BUSINESS & COMMERCE CODE Section 17.50(d).

## VI.
## COUNT TWO: FRAUDULENT INDUCEMENT

21. All factual allegations set forth elsewhere in this Complaint are incorporated by reference in support of this cause of action as if specifically alleged herein.

22. On numerous occasions during the course of the negotiation and transaction, Plaintiff demonstrated a high-level of interest in an eventual trade-in opportunity for a larger yacht. Defendant consistently represented to Plaintiff that purchasing the L550 Fly would provide Plaintiff with that opportunity. In addition, Defendant represented to Plaintiff that the L550 Fly was a seaworthy vessel that conformed to all Contractual requirements. This information was material to Plaintiff and prompted Plaintiff to purchase the L550 Fly.

23. Defendant's representations were false. It is Plaintiff's belief that Defendant made these representations with the intent that Plaintiff rely on the representations and enter into the transaction. Plaintiff relied on the representations and entered into the transaction, which caused Plaintiff injury.

24. Plaintiff further alleges that because Defendant knew that the representations made were false at the time they were made and the representations were designed to induce Plaintiff into performance, the representations were willful and malicious and constitute conduct for which

the law allows the imposition of exemplary and/or punitive damages. Accordingly, Plaintiff requests that exemplary and/or punitive damages be awarded against Defendant in a sum within the jurisdictional limits of the Court.

25. Under this cause of action, Plaintiff is entitled to recover exemplary damages, reasonable attorneys' fees and interest as further alleged below.

## VII.
## COUNT THREE: FRAUDULENT MISREPRESENTATION

26. All factual allegations set forth elsewhere in this Complaint are incorporated by reference in support of this cause of action as if specifically alleged herein.

27. Defendant directly made false representations to Plaintiff that the L550 fly was a seaworthy vessel that conformed to Contractual requirements, and that a benefit of purchasing the L550 Fly was the entitlement to an eventual trade-in opportunity on an upgraded larger yacht. At the time of these representations, Defendant was aware that such representations were untrue, and that the upgraded yachts were being extinguished. Knowing that these items, including the ability to upgrade, were material to Plaintiff, Defendant knowingly misrepresented that Plaintiff could do so all the while knowing that it would be an impossibility once the L550 Fly was purchased by Plaintiff.

28. Plaintiff's reliance on Defendant's representations caused Plaintiff injury. Under this cause of action, Plaintiff is entitled to recover exemplary damages, reasonable attorneys' fees and interest as further alleged below.

## VIII.
## COUNT FOUR: FRAUDULENT NON-DISCLOSURE

29. All factual allegations set forth elsewhere in this Complaint are incorporated by reference in support of this cause of action as if specifically alleged herein.

30. Plaintiff would further show that the damages suffered were a result of Defendant's fraud by non-disclosure. Defendant failed to disclose that the yachts above the L550 Fly were being extinguished and that the L550 Fly was not a seaworthy vessel that conformed to Contractual requirements. Defendant committed fraud by non-disclosure through the following acts and omissions:

    a. Defendant concealed from or failed to disclose certain facts to Plaintiff;

    b. Defendant had a duty to disclose those facts to Plaintiff;

    c. Those facts were material to Plaintiff;

    d. Defendant knew (i) that Plaintiff was ignorant of the facts and (ii) that Plaintiff did not have an equal opportunity to discover the facts;

    e. By failing to disclose the true facts, Defendant intended to induce Plaintiff into the purchase;

    g. Plaintiff relied upon the non-disclosure to its detriment; and

    h. Plaintiff was injured as a result of acting without the knowledge of the undisclosed facts.

31. Under this cause of action, Plaintiff is entitled to recover exemplary damages, reasonable attorneys' fees and interest as further alleged below.

### IX.
### COUNT FIVE: BREACH OF WARRANTY

32. All factual allegations set forth elsewhere in this Complaint are incorporated by reference in support of this cause of action as if specifically alleged herein.

33. The L550 Fly transaction involved express and implied warranties regarding the quality of the L550 Fly and an agreement to correct defects that may arise after its purchase. Defendant breached its express and/or implied warranties as set forth herein and failed to cure the

substantial defects discovered by Plaintiff. Plaintiff timely provided notice to Defendant regarding the defects, and Defendant has both failed to admit responsibility and/or cure any of the identified defects.

34. As a direct and proximate result of Defendant's breach, Plaintiff has and will continue to incur costs and expenses and suffer actual, direct, indirect, nominal, incidental, reliance, consequential, general, and special damages. Defendant is liable to Plaintiff for expenses incurred to investigate and remedy the defective L550 Fly. Plaintiff would further show that under this theory of recovery, it is entitled to recover reasonable attorneys' fees, costs, and interest as alleged below.

## X.
## COUNT SIX: NEGLIGENT MISREPRESENTATION

35. All factual allegations set forth elsewhere in this Complaint are incorporated by reference in support of this count as if specifically set forth herein.

36. In the course of Defendant's business, namely the transactions that form the basis of this Claim of which Defendant had a pecuniary interest, Defendant made representations to Plaintiff, directly or indirectly, that Plaintiff would have the opportunity to trade the L550 Fly for a larger yacht and that the L550 Fly had been constructed such that it would be seaworthy and conform to Contractual requirements and customer expectations. Defendant made these representations with the intent to induce Plaintiff into purchasing the L550 Fly. However, this information provided by Defendant was knowingly false and/or Defendant did not exercise reasonable care or competence in obtaining or communicating the information to Plaintiff. Plaintiff justifiably relied upon the information.

37. As a direct and proximate result of the Defendant's misrepresentations, Plaintiff has and will continue to incur costs and expenses and suffer actual, direct, indirect, nominal,

incidental, reliance, consequential, general, and special damages.

## XI.
## COUNT SEVEN: NEGLIGENCE

38. All factual allegations set forth elsewhere in this Pleading are incorporated by reference in support of this cause of action as if specifically alleged herein.

39. Defendant was negligent in developing, designing, manufacturing, testing, selling, and/or marketing the L550 Fly.

40. At all times material hereto, Plaintiff attempted to use the L550 Fly for the foreseeable intended purposes for which it was developed, designed, manufactured, tested, sold, and/or marketed. Plaintiff was a foreseeable intended user of the L550 Fly.

41. Defendant owed a duty to Plaintiff to use reasonable care in developing, designing, manufacturing, testing, selling, and/or marketing a product free from defects in material or workmanship that was safe and functional for normal operation, and did not pose a foreseeable risk of harm. Defendant failed to exercise such reasonable care.

42. Plaintiff's damages are the direct and proximate result of the Defendant's breach of its duty of care, as well as that of its agents, servants, employees, and apparent agents acting within and during the scope of their employment, authority, or apparent authority. Plaintiff's damages are not due to any act or failure on the part of Plaintiff.

43. Consequently, and as a direct result of Defendant's breaches, Plaintiff has suffered actual, direct, economic, and non-economic damages.

## XII.
## COUNT EIGHT: STRICT LIABILITY

44. All factual allegations set forth elsewhere in this Pleading are incorporated by reference in support of this cause of action as if specifically alleged herein.

45. Defendant is the manufacturer, designer, distributor, and/or seller of the L550 Fly.

46. The L550 Fly was sold and delivered to Plaintiff. At all times prior to delivery, the L550 Fly was in the exclusive control of Defendant, its agents, servants, employees, and/or apparent agents, and was delivered to Plaintiff without substantial change in its condition.

47. Plaintiff attempted to use the L550 Fly as designed for its intended purpose by Defendant, without any change in its condition from the time it left the control of Defendant until it was used by Plaintiff.

48. The L550 Fly, which was sold and delivered to Plaintiff by and through Defendant, its agents, servants, employees, and/or apparent agents, and ultimately used by Plaintiff, was, at the time of sale and delivery, in a defective condition and posed unreasonable risks to its users.

49. The L550 Fly was defective and posed unreasonable risks to users in that it had several critical defects and it was not a seaworthy vessel. As a direct result of the defective condition of the L550 Fly, Plaintiff suffered the damages described herein. Had the L550 Fly not been manufactured, designed, distributed, or sold by Defendant and/or its agents, servants, employees, and/or apparent agents in such condition, Plaintiff's injuries would not have occurred.

## XIII.
## DAMAGES

50. Plaintiff contends that the court is the sole decision maker on the amount of damages suffered. In this regard Plaintiff seeks monetary relief over $1,000,000.00, including damages of any kind, penalties, court costs, expenses, prejudgment interest, and attorneys' fees.

## XIV.
## EXEMPLARY DAMAGES

51. To the extent that Defendant's conduct and misrepresentations are found to have been made by gross negligence, malice, by fraud, or otherwise, Plaintiff seeks and award of exemplary damages under TEXAS CIVIL PRACTICE AND REMEDIES CODE, SECTION 41.003(a).

## XV.
## CONDITIONS PRECEDENT

52. All conditions precedent for Plaintiff to bring and file these claims against Defendant have been performed, have occurred, or have been waived or excused.

## XVI.
## ATTORNEYS' FEES

53. Plaintiff employed Lovein Ribman, P.C., licensed attorneys, to represent it and pursue recovery for its damages. As a result, Plaintiff is entitled to recover its reasonable and necessary attorneys' fees in the preparation and trial of this action, including any appeals related thereto.

## XVII.
## INTEREST

54. Plaintiff would show that if it is allowed to recover under any theory in this cause, it is entitled to prejudgment interest on such amount at the highest rate allowed by law. Further, Plaintiff would show that if it is allowed to recover under any theory in this cause, then it is entitled to post-judgment interest at the highest rate allowed by law from the date of judgment until the satisfaction of same.

## XVIII.
## PRAYER

WHEREFORE, Plaintiff prays that it be granted judgment against Defendant for each of the following:

1. upon any of the theories, actions, or causes of action or accounts pled above against Defendant for an amount within the jurisdictional limits of the Court, and for judgment against Defendant for all relief enumerated (whether generally or specifically) in this Pleading and prayer;

2. Plaintiff's reasonable attorneys' fees, and if this cause requires a trial, for Plaintiff's reasonable attorneys' fees in the prosecution of same; and an additional sum (or sums) if this cause

is appealed as specified above;

3. all prejudgment interest to which Plaintiff is entitled at the highest rate allowed by law;

4. all post-judgment interest to which Plaintiff is entitled at the highest rate allowed by law;

5. exemplary damages;

6. all costs of court;

7. such orders and judgments affecting the obligations of Defendant and the rights of Plaintiff as this Honorable Court may find appropriate under the circumstances; and

8. such other relief, both general and special, at law or in equity, to which Plaintiff may show itself justly entitled.

        Respectfully Submitted,
        **LOVEIN | RIBMAN, P.C.**

        By: /s/ *David V. Pipal*
            Robert M. Lovein
            Texas State Bar No. 24053629
            rlovein@loveinribman.com
            David V. Pipal
            Texas State Bar No. 24104279
            dpipal@loveinribman.com
            Zak Presley
            Texas State Bar No. 24094902
            zpresley@loveinribman.com

        1225 Main Street, Suite 200
        Grapevine, Texas 76051
        Telephone: (817) 442-5106
        Facsimile: (817) 442-5108

        **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of January, 2020, a copy of the foregoing document was served on all counsel of record in the following manner:

**VIA EMAIL**
Joel W. Mohrman
jmohrman@mcglinchey.com
Stacey L. Fuller
sfuller@mcglinchey.com
McGlinchey Stafford, PLLC
1001 McKinney, Suite 1500
Houston, Texas 77002

/s/ *David V. Pipal*
David V. Pipal